31203. OGLESBY *v.* THE STATE.

DECIDED APRIL 16, 1946.

*W. G. Neville,* for plaintiff in error.

*John F. Brannen, solicitor,* contra.

BROYLES, C. J. D. E. Oglesby was convicted of a misdemeanor in Bulloch County, where the no-fence or stock law was not in operation. The accusation charged that in said county, on May 17, 1945, he committed the offense of cruelty to animals by wilfully and maliciously killing a certain described hog, the property of Mrs. Bessie Arnold, thereby causing it unjustifiable physical pain, suffering, and death, contrary to the laws of Georgia. The defendant's motion for a new trial was denied, and that judgment is assigned as error.

The defendant's defense was an alibi. The evidence upon that subject, while in conflict, authorized the jury to find that he was present at the scene when the hog was killed. The other evidence, direct and circumstantial, amply authorized the jury to find that he intentionally and maliciously killed the animal.

The Code, § 26-7901, declares that any person who shall maliciously maim or kill a hog shall be guilty of a misdemeanor. That section further provides: "When the person killing or maiming such animal shall set up as a defense that the killing or maiming was done, not from malice toward the owner, but to prevent injury to the defendant's crop or other property, such defense shall not avail to acquit the defendant unless it be made clearly to appear that the crop or other property was protected by a substantial fence not less than four and one-half feet high." And § 62-403, requires a substantial fence not less than four feet high. Neither of these two sections applies to any killing or maiming of animals in any county where the no-fence or stock law is in operation. The defendant contends that his conviction was contrary to the evidence, because it was not shown that the killing of the hog was malicious, since the evidence failed to show any "words" between the prosecutrix and the defendant or any threats by the defendant to injure the hog in question. We can not agree with this contention. "The purpose of this statute [Code, § 26-7901], punishing any person for cruelty to certain animals, is for the protection of the animals themselves, and not the owner's property rights therein, and in an accusation thereunder it is not necessary to prove actual ill will or resentment toward the owner or possessor of the property." *Quick* v. *State, 62 Ga. App.* 551 (8 S. E. 2d, 733). Moreover, § 26-7901, properly construed, means that, in a case like the present one, where the evidence shows that the defendant actually killed his neighbor's hog while it was trespassing upon his premises, his only defense is that his crop or other property was protected by the statutory fence required by § 26-7901 or § 62-403.

But the defendant cites *Crowder* v. *State,* 10 *Ga. App.* 355 (73 S. E. 424), where this court held that there was no evidence that the killing of the hog in question was malicious, since the only evidence from which malice could be inferred was that the accused did not have the statutory fence around his crop to prevent its destruction. However, the original record in that case discloses that the killing occurred in a county where the no-fence law *was in operation* and where the Code sections, supra, did not apply.

Furthermore, there was other evidence in the instant case tending to show malice in the killing of the hog. On the same oc-

casion that the defendant killed the animal in question, he unlawfully shot two other hogs owned by his neighbors; he had never complained to the prosecutrix about her hogs coming on his premises; and, so far as the evidence shows, her hogs had never gone upon his land prior to the day of the killing of the one in question. And the evidence was undisputed (and so admitted in the brief of counsel for the accused) that the defendant did not have his crop or other property protected by the statutory fence required by either of the above-cited Code sections. The general grounds of the motion for a new trial were properly overruled.

A ground of the motion for a new trial alleges that the court erred in its charge to the jury by reading to them all of Code, § 26-7901, because the latter part of the section was not applicable to the case, since the defendant's defense was based on an alibi, and not upon the ground that the hog was killed to prevent injury to his crop or other property. It is true that in his statement to the jury the defendant said that he was not in Bulloch County when the hog was killed, and that statement was corroborated by only one witness, who was the defendant's brother-in-law. However, the prosecutrix and several other witnesses testified that the defendant was present at the killing and that he killed the hog, and it was clearly inferable from the evidence, direct and circumstantial, that the killing was malicious, and was committed to prevent injury to the defendant's crop. Although he based his defense upon an abili, if the jury should find against the alibi (as they evidently did), then, under the law, he could have had another defense, namely, that the hog was killed to protect his crop, and that he had the statutory fence around his crop. The court, therefore, did not err in charging all the provisions of the Code, § 26-7901.

Another ground of the motion excepts to the charge upon the subject of "cruelty." The ground alleges that "this charge was error because there is nothing in the accusation by the State to warrant it." The accusation charges that the defendant on May 17, 1945, unlawfully "did then and there commit the offense of cruelty to animals." The ground is without merit.

In another ground it is alleged that the court erred "in expressing an opinion on the evidence offered by the State," under the following circumstances: The State put Tom Woods on the stand

for the purpose of disproving the defendant's alleged alibi, which was that the defendant was not in Bulloch County when the hog in question was shot and killed on his premises in that county. Woods testified that he did not see the defendant shoot the hog, but that his farm adjoined· the defendant's farm, and, on the day that the hog was shot and killed, he saw the defendant in the defendant's field and heard several shots; that he did not know who shot the hog, and did not know when the hog was shot except what somebody told him. Counsel for the accused moved to exclude the above-stated testimony on the ground that it was hearsay and inadmissible, and said to the court, "I would like for you to rule on it as to the testimony being hearsay and inadmissible." The court then stated, "He said he saw him, that would establish that part of it." Counsel replied, "He does not know who shot the hogs and undertakes to say. he saw the man the same day they said they were shot, and it is inadmissible." The solicitor thereupon said, "He testified he saw the man. the same day the hog was shot." The court then said, "Bring him back to the stand and see what he says." The witness was brought back and testified as follows: "As to whether I know what time those hogs were killed, I know what time the shots were fired. That was somewhere around four to five o'clock in the afternoon, that would be my guess. I would say that was along during something like the middle of May, this year. I could not say it was on May the 17th. · I saw Mr. Oglesby in his field soon after I heard the shots, and that was around four or five o'clock in the afternoon. I did not see him shoot the hogs, or hear any hog squeal. I did not go into his field."

After the last-quoted testimony of the witness, the record shows that counsel for the accused did not renew his motion to exclude the testimony, and failed to make any objection during the trial to the statement of the court. The ground of the motion for a new trial alleges that the statement of the judge was an expression of an opinion that the defendant was at the scene of the alleged crime when it was committed, and was prejudicial to the accused. The ground shows that counsel for the defendant was contending that all of the above-quoted testimony of the witness was hearsay and, therefore, inadmissible, that he requested the court to rule on his contention, and that the court complied with

that request and made the statement excepted to. Under the above-stated circumstances, when the court, in answer to counsel's request, stated that "he [the witness] says he saw him, that would establish *that part* of it" (Italics ours), it is clearly inferable that the court only meant to say that the part of the testimony of the witness, that he saw the defendant at the scene of the killing, showed or established that such part of the testimony of the witness was not hearsay, and we think that the jury must have so understood the statement. Moreover, the judge's statement was made during a colloquy between him and counsel for the accused; and, under numerous decisions of the Supreme Court and this court, a statement by the judge under such circumstances is an exception to the general rule that it is reversible error for a judge, during the trial of a case, to express any opinion as to what has been proved.

Furthermore, in this case, counsel for the accused made no objection, during the trial of the case, to the statement of the court, and complained of it for the first time in the motion for a new trial. Where the judge during the trial of a criminal case made in the presence of the jury an alleged improper statement prejudicial to the accused, and "the defendant took no exception to this occurrence at the time, and complained of it for the first time in his motion for a new trial, he could not abide the chance of a favorable verdict, and, after the return of an adverse verdict, have that verdict set aside because of such remark by the judge." *Trussell* v. *State*, 181 *Ga.* 424 (182 S. E. 514); *Pulliam* v. *State*, 196 *Ga.* 782 (6, 7) (28 S. E. 2d, 139).

The remaining special grounds of the motion are without substantial merit and show no cause for a new trial.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*