## 44979. JONES v. THE STATE.
(363 SE2d 529)

GREGORY, Justice.

Walter Clayton Jones, the petitioner in this case, was convicted of rape and aggravated sodomy. At trial the victim testified on behalf of the State that just prior to the commission of the crimes charged, the petitioner gave her alcohol and marijuana. On cross-examination

the petitioner admitted he offered the victim marijuana and further admitted that he was married at the time the sexual acts with the victim took place. The State took the position that by admitting the crimes of possession of marijuana, OCGA § 16-13-30 (j), and adultery, OCGA § 16-6-19, the petitioner had admitted less than all of his prior criminal conduct in the attempt to portray his character, albeit bad, as better than it actually was. The trial court concluded, under the authority of *Phillips v. State*, 254 Ga. 370 (329 SE2d 475) (1985), that the petitioner had placed his character in issue within the meaning of OCGA § 24-9-20 (b), and permitted the State to introduce petitioner's eight prior felony convictions in evidence. A majority of the Court of Appeals affirmed. *Jones v. State*, 184 Ga. App. 37 (360 SE2d 622) (1987).

We granted certiorari to determine the applicability of *Phillips*, supra, to this case.

1. In Georgia, "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2. This code section applies to both civil and criminal cases. See *Grannemann v. Salley*, 95 Ga. App. 778 (99 SE2d 338) (1957); *Anderson v. State*, 206 Ga. 527 (57 SE2d 563) (1950). OCGA § 24-9-20 (b) provides, in part, "If a defendant in a criminal case wishes to testify and announces in open court his intention to do so, he may so testify in his own behalf. If a defendant testifies, he shall be sworn as any other witness and may be examined and cross-examined as any other witness, *except that no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue.*" (Emphasis supplied.) OCGA § 24-9-20 (b) was not adopted by the legislature until 1962. Ga. Laws 1962, p. 133. To understand the legislature's intent in prohibiting the State from presenting evidence of the defendant's "general bad character or prior convictions" unless the defendant "first put his character in issue," it is necessary to understand the evolution of the role of character evidence in a criminal trial prior to the effective date of this code section.

Until 1895 a criminal defendant was not allowed to speak to the issues for which he was on trial as he was not considered competent to testify. See Code 1868, § 3798 (2). The Penal Code of 1895 permitted a defendant, for the first time, to make an *unsworn* statement to the jury which was not subject to cross-examination. Penal Code 1895, § 1010. However, the defendant was still not considered competent to testify at trial. Penal Code 1895, § 1011. It was not until 1962 that a criminal defendant was considered competent to give sworn testimony at his trial. Ga. Laws 1962, p. 133, former Code Ann. §§ 38-

415 and 38-416. It was at this time that the legislature enacted that portion of OCGA § 24-9-20 (b) which prohibits the state from introducing evidence of a criminal defendant's prior convictions or "general bad character" until that defendant has "first put his character in issue." From 1962 until 1973 the defendant had the option of making an unsworn statement to the jury, or taking the witness stand and testifying in his own behalf subject to cross-examination by the state. In 1973 the legislature repealed that portion of former Code Ann. § 38-415 which permitted a criminal defendant to make an unsworn statement at trial, See Ga. Laws 1973, p. 292 et seq., leaving OCGA § 24-9-20 (b) as it exists today.

Well before a criminal defendant was permitted to speak to the issues against him, either through his unsworn statement or sworn testimony at trial, he was permitted to use his good character as a defense to the crime charged. However, the early cases allowed this defense only where there existed a "doubt" as to the defendant's guilt. *Epps v. State*, 19 Ga. 102 (1855); *Coxwell v. State*, 66 Ga. 309 (1880). It was later held that good character could of itself generate a reasonable doubt as to the defendant's guilt, *Shropshire v. State*, 81 Ga. 589 (8 SE 450) (1888); *Clark v. State*, 52 Ga. App. 254, 255 (183 SE 92) (1935), and was a "substantive fact, like any other fact tending to establish the defendant's innocence, and ought to be so regarded by the court and jury." *Sims v. State*, 84 Ga. App. 753, 757 (67 SE2d 254) (1951). It was held that the defense of good character is the reputation surrounding the defendant previous to the charge for which he was on trial. *Keener v. State*, 18 Ga. 194 (1855); *Eidson v. State*, 66 Ga. App. 765 (19 SE2d 373) (1942). "Reputation for character, good or bad, may be proved by showing what people generally say." *Powell v. State*, 101 Ga. 9 (29 SE 309) (1897).

The state was not allowed to introduce evidence of the character of the accused unless the accused himself "put his character in issue," either through his own unsworn statement or by the testimony of his witnesses as to his reputation in the community. *Ward v. State*, 14 Ga. App. 110, 111 (80 SE 295) (1913); *Clark v. State*, 52 Ga. App., supra. It was held that where the defendant put his character in issue by introducing witnesses who testified that his reputation was good, the state could "reply by showing on cross-examination or otherwise, that [the defendant] had previously been confined in the chain-gang or penitentiary." *Henderson v. State*, 5 Ga. App. 495 (63 SE 535) (1908); see also *McKenzie v. State*, 8 Ga. App. 124 (68 SE 622) (1910). Or the state could prove that the defendant had been convicted of a crime involving moral turpitude. *Smith v. State*, 11 Ga. App. 89 (74 SE 711) (1912); *Giles v. State*, 71 Ga. App. 736 (32 SE2d 111) (1944).

It was stated that the prosecution was prevented from presenting

evidence of the defendant's bad character where the defendant had not placed his character in issue "for reasons rather of policy and humanity than because proof that the defendant has a bad character is not relevant to the [case]. 4 Chamberlayne, *Modern Law of Evidence*, § 4526. 'The rule is one of administrative policy. The source of it may be found in the principle of the law of English speaking people, which obtains in criminal actions, that the accused is presumed to be innocent until he is proven guilty. It would clearly be difficult to maintain this presumption of innocence in the minds of the jurors if testimony were given of a long list of crimes alleged to have been committed by the accused. A prejudice against him would naturally be aroused in the minds of the jurors if such a practice were followed.' " *Bryant v. State*, 65 Ga. App. 523, 530 (16 SE2d 241) (1941). See also McCormick, Evidence, § 190, 3rd ed. (1984).

Prior to the time when the criminal defendant was considered competent to be a witness at trial, see Ga. Laws 1962, p. 133, supra, he was permitted to place his general good character in issue by either his own unsworn statement of his general reputation in the community, or by testimony of witnesses as to his general reputation in the community. See, e.g., *Folds v. State*, 90 Ga. App. 849 (84 SE2d 584) (1954); *Smith v. State*, 91 Ga. App. 360 (85 SE2d 623) (1955). The defendant was not permitted to prove his general good character by eliciting testimony of specific acts of good behavior from his witnesses. *Giles v. State*, 71 Ga. App. 736 (32 SE2d 111) (1944). Likewise, when the defendant put his *general* good character in issue, the State was permitted to rebut it by evidence as to his *general* bad character, but not by evidence of specific acts of bad conduct, apart from proof of prior convictions.[1] *Doyle v. State*, 70 Ga. 134 (1883); *Folds v. State*, 90 Ga. App., supra; *Giles v. State*, supra. However, on cross-examination of character witnesses, both the State and the defendant were permitted to "elicit the witness's information of specific instances of conduct tending to disprove the witness's estimate of [the defendant's] character." *Baldwin v. State*, 138 Ga. 349, 350 (75 SE 324) (1912).[2] This was allowed in order to test "the extent and foundation of the witness's knowledge and the correctness of his testimony on direct examination." *May v. State*, 185 Ga. 335, 338 (195 SE 196) (1938). The character witness could testify only to the general reputation of the defendant in the community and was not permitted

---

[1] For example, where the defendant presented evidence of his general good character, the State could not offer testimony by the arresting sheriff that he had previously smelled liquor on the defendant's breath, or had been called to quell disturbances at the defendant's house. *Smith v. State*, 91 Ga. App. 360 (85 SE2d 623) (1955).

[2] Here the State was permitted to ask the defense character witness on cross-examination whether he had ever heard that the defendant beat the victim in the past.

to give his personal opinion as to the defendant's character. *Powell v. State*, 101 Ga. 9 (29 SE 309) (1897). Testimony by a defense character witness that he had never heard anyone in the community speak ill of the defendant was some evidence that the reputation of the defendant was good. Id.

While defense character witnesses were not allowed to testify to specific acts of good conduct, the defendant was permitted to prove through his character witness a general reputation for a specific trait. The State was then permitted to show "general bad character with respect to the particular trait . . . in rebuttal." *Mimbs v. State*, 189 Ga. 189, 192 (5 SE2d 770) (1939).[3]

While the rule was that the defendant could not prove his general good reputation by a witness' testimony of specific acts of good conduct, the defendant was allowed in his unsworn statement to tell the jury of specific transactions of his good conduct. The State was entitled to rebut such a statement only with regard to the specific transaction addressed by the defendant. *Folds v. State*, supra.[4] A defendant's statement as to a specific instance of good conduct would not open the inquiry to his *general* reputation. Id. In this circumstance the defendant did not place his character in issue. Where the defendant's unsworn statement included a denial of committing the crime charged, the state could rebut the statement with proof that the defendant had committed the crime charged, and with testimony contradicting the facts addressed by the defendant. The denial of the crime did not place the defendant's general character in issue. *Lee v. State*, 197 Ga. 123 (28 SE2d 465) (1943); *Robinson v. State*, 207 Ga. 337 (61 SE2d 475) (1950).

Prior to 1962 the rule was, as it is today, that where the defendant had not placed his general character in issue, proof of prior offenses or convictions was not admissible unless offered for some proper purpose[5] other than to show the defendant is a person of bad character.[6] *Mimbs v. State*, supra; *Chambers v. State* 76 Ga. App. 269

---

[3] For example, in *Mimbs* the question was whether the defendant had put his reputation for "peaceableness" in issue such that the state could show the defendant had a reputation for violence. Likewise, in *Eidson v. State*, 66 Ga. App. 765 (19 SE2d 373) (1942), the defendant was permitted to prove a reputation for "peaceableness." See also *Giles v. State*, 71 Ga. App. 736 (32 SE2d 111) (1944).

[4] For example, where the defendant in his unsworn statement stated he had never had "any trouble fighting anyone," the State was not permitted to rebut this by showing the defendant had previously been convicted of gaming with cards. *Carroll v. State*, 77 Ga. App. 251 (48 SE2d 491) (1948).

[5] A proper purpose does not include the traditional method of impeaching an ordinary witness by proof that he has been convicted of a crime involving moral turpitude. Agnor, Georgia Evidence, § 5-8 (1976); *Powell v. State*, 122 Ga. 571 (50 SE 369) (1905).

[6] For example, a prior offense was admissible when "offered for the purpose of proving and tend[ing] to show a common design, scheme, plan or purpose, or some other rational

(45 SE2d 724) (1947); *Lee v. State*, 8 Ga. App. 413 (2) (69 SE 310) (1911).

This was the law in Georgia when the legislature enacted that portion of OCGA § 24-9-20 (b) which provides that "no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." The aforementioned cases support a conclusion that prior to the enactment of this code section, a defendant did not place his general good character in issue by inadvertence, but by design: the defendant either presented defense witnesses who testified to his general reputation in the community, or gave an unsworn statement which amounted to his own assessment of his general reputation in the community. See, e.g., *Bacon v. State*, 209 Ga. 261, 262 (71 SE2d 615) (1952), where it was held "that the general character of the defendant . . . is irrelevant unless the defendant *chooses* to put his character in issue." (Emphasis supplied.) We hold that the legislature, aware of the development of the law of character evidence, intended that only where the defendant makes an election[7] to place his good character in issue may the State offer evidence of the defendant's general bad character or his prior convictions under the authority of OCGA § 24-9-20 (b). Therefore, where the defendant offers testimony of a witness as to his general good reputation in the community, the State may prove the defendant's general bad reputation in the community, and may additionally offer evidence that the defendant has been convicted of prior offenses under the authority of OCGA § 24-9-20 (b).[8]

We further hold that a defendant does not put his "character in issue" within the meaning of OCGA § 24-9-20 (b) by inadvertent statements regarding his own good conduct.[9]

---

connection with the offense for which [the defendant] is being tried. *Mimbs v. State*, 189 Ga. 189, 193 (5 SE2d 770) (1939).

[7] In *Frazier v. State*, 257 Ga. 690, 698 (362 SE2d 351) (1987), this court held that "unless and until the [criminal] defendant *elects to make it so*, character *per se*, good or bad, is not an issue in the case." (Emphasis supplied.)

[8] The rules regarding use of character evidence changed little after the adoption of OCGA § 24-9-20 (b). Character evidence is still regarded as a substantive fact indicative of the defendant's innocence, *Conner v. State*, 251 Ga. 113 (303 SE2d 266) (1983), which may of itself create a reasonable doubt as to his guilt. *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981). The rule remains that the state may not prove the defendant's general bad character by specific acts of bad conduct. Agnor, Georgia Evidence, § 10-4 (1976). However, the state may explore specific acts of bad conduct on cross-examination of the defendant's character witnesses for the purpose of testing the witnesses' knowledge of the defendant's reputation. See *Everett v. State*, 253 Ga. 359, 360 (320 SE2d 535) (1984); *Kittles v. State*, 168 Ga. App. 123 (308 SE2d 241) (1983). The defendant may not prove his general good character by a character witness who testifies to his personal opinion of the defendant. *Gravitt v. State*, 220 Ga. 781 (141 SE2d 893) (1965). Compare FRE 405 (a).

[9] In *State v. Braddy*, 254 Ga. 366 (330 SE2d 338) (1985) (Gregory, J., dissenting), this court held that the defendant placed his character in issue by testifying on direct examination to specific acts of his own good conduct. In that case there was clearly an election by the

There are a number of circumstances in which it has been stated that the defendant has placed his "character in issue" when something entirely different has occurred. As Judge Benham points out in his special concurrence to *Phillips v. State*, 171 Ga. App. 827 (321 SE2d 393) (1984), these cases are generally consistent in result with the above-cited rules, if not in terminology.

(a) Where the defendant testifies in his own behalf and " 'falsely denies past criminal conduct [or past misdeeds,] the State may introduce evidence reflecting negatively on the defendant's character only insofar as that evidence proves the falsity of *specific testimony* of the defendant.' " *Porter v. State*, 254 Ga. 388 (2) (330 SE2d 94) (1985), citing Judge Benham's special concurrence in *Phillips v. State*, supra. (Emphasis supplied.) In this circumstance the defendant has not placed his character "in issue" within the meaning of OCGA § 24-9-20 (b). Rather, we recognize this as a situation where the state is permitted to rebut statements of a defendant who testifies at trial by disproving the facts testified to. Accord *Murray v. State*, 157 Ga. App. 596 (278 SE2d 2) (1981). Where a defendant testifies he has no prior *convictions*, his testimony is not subject to rebuttal by proof of prior *arrests*. *McGuire v. State*, 238 Ga. 247 (232 SE2d 243) (1977).

(b) Where the defendant testifies and admits prior criminal conduct, he has not placed his character "in issue" within the meaning of OCGA § 24-9-20 (b). Rather, he has raised an issue which may be fully explored by the State on cross-examination. *McDaniel v. State*, 248 Ga. 494 (283 SE2d 862) (1981). If, however, the defendant testifies he has committed a crime, implying that this is his only criminal record, his testimony is again subject to rebuttal by proof of other crimes he has committed.

(c) There are numerous instances where the state may properly offer evidence that the defendant has committed prior crimes for a purpose other than to show the defendant is a person of bad character. See, e.g., *Rainwater v. State*, 256 Ga. 271 (347 SE2d 586) (1986); McCormick, Evidence, § 190, 3rd ed. (1985). The fact that such evidence may reflect adversely on the defendant does not place his character "in issue" within the meaning of OCGA § 24-9-20 (b). *Rainwater*, supra; *Tucker v. State*, 249 Ga. 323 (290 SE2d 97) (1982). Likewise, when a witness gives a non-responsive answer to a question impacting negatively on the defendant's character, this does not place the defendant's character in issue under OCGA § 24-9-20 (b). *Woods*

---

defendant to place his character in issue. The defendant even requested a charge on character as a defense.

Perhaps it would be helpful if, by statute, a defendant were required to give written notice of an election to put his character in issue. This would clearly distinguish an inadvertent statement from a choice to use character as a defense.

*v. State,* 233 Ga. 495 (212 SE2d 322) (1975).

2. As noted above, the Court of Appeals in the case before us held under the authority of *Phillips v. State,* 254 Ga. 370 (329 SE2d 475) (1985), that the petitioner had placed his character in issue and therefore his prior felony convictions were admissible against him.

In *Phillips,* the defendant testified on direct examination that he had been in Florida at the time the crime with which he was charged was committed in Georgia. When asked by defense counsel why he had gone to Florida, the defendant replied, "Well, I was on parole and I had violated my parole. . . ." The issue before this court was whether the defendant's testimony placed his character in issue within the meaning of OCGA § 24-9-20 (b) such that the State could introduce the defendant's prior felony conviction, for which he was on parole, in evidence. The majority opinion concluded that it did, holding that "where a defendant admits any prior criminal conduct less than all his criminal offenses, he has put his character in issue within the meaning of OCGA § 24-9-20 (b) . . . by attempting to portray his character, albeit bad, as being better than it actually is. Thus, where a defendant admits any prior criminal conduct, the prosecutor may cross-examine him as to such conduct, and *may prove other convictions.*" (Emphasis supplied.)

This holding is inconsistent[10] with the prior decisions and rationale stated herein, and is therefore overruled.

In the case before us the petitioner admitted committing two crimes other than the crime with which he was charged. The State was entitled to fully explore this testimony on cross-examination. However, under the holding of this opinion the petitioner did not place his character in issue within the meaning of OCGA § 24-9-20 (b), and the State was therefore not entitled to introduce petitioner's prior felony convictions against him.

*Judgment reversed. All the Justices concur.*

DECIDED JANUARY 6, 1988 —
RECONSIDERATION DENIED FEBRUARY 4, 1988.

*Philip L. Ruppert,* for appellant.
*Johnnie L. Caldwell, District Attorney, J. David Fowler, Assistant District Attorney,* for appellee.

---

[10] However, the *result* in this case is consistent with prior decisions of this court because the defendant's testimony concerning his parole opened the door to cross-examination as to the conviction for which he was on parole.